IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER B. YEREMIAN, Administrator of the Estate of PETER J. YEREMIAN, Deceased, : : : : : Plaintiff, : v. : : SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, : : : Defendant. : | CIVIL ACTION<br><br><br><br><br><br>NO. 11-06842 |

MEMORANDUM

BUCKWALTER, S. J.                                                                                                February 7, 2012

      Currently pending before the Court is the Motion of Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") to Dismiss Plaintiff's Complaint. For the following reasons, the Motion is granted.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

      This action stems from an incident that occurred aboard one of Defendant SEPTA's trains which resulted in the death of Peter J. Yeremian ("the Decedent"), a resident of Broomall, Pennsylvania. (Compl. ¶ 2.) According to the facts set forth in the Complaint, at approximately 20:00 hours on January 29, 2010, Decedent boarded SEPTA's Route 100 train at the 69th Street Terminal station. (Id. ¶¶ 10, 12–13.) The Decedent was staggering and appeared intoxicated when boarding the train. (Id. ¶ 14.) When the train arrived at the Norristown Transportation Center approximately forty minutes later, Defendant's train operator, Benjamin Huleatt ("Huleatt"), noticed that the Decedent was slouched in his seat. (Id. ¶¶ 14, 16.) Huleatt attempted to arouse the

Decedent, but was unable to do so. (Id. ¶¶ 16, 17.) Huleatt thereafter contacted a SEPTA dispatcher requesting further instructions on how to handle the situation. (Id. ¶ 17.) The dispatcher instructed Huleatt to complete his regular train route and then return to the 69th Street Terminal, at which point SEPTA Transit Police would handle the matter. (Id.) Upon returning to the Terminal at approximately 21:20 hours, it was determined that Decedent died aboard the train. (Id. ¶ 18.)

As Decedent's father and executor of his estate, Plaintiff Peter B. Yeremian ("Plaintiff" or "Yeremian") commenced this action pursuant to 42 U.S.C. § 1983 on November 1, 2011, alleging that Decedent's death and extreme pain and anguish were caused by SEPTA's misconduct, through the actions of its agents and employees.[1] Defendant filed this Motion to Dismiss on December 13, 2011. Plaintiff filed an Answer on January 17, 2012. The Court will now consider the merits of Defendant's Motion.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

---

[1] Plaintiff's Complaint is styled in a manner that brings five separate Counts against the Defendant. These five Counts, however, conflate Plaintiff's arguments in support or defense of his claims with the claims and/or causes of action in and of themselves. Therefore, when discussing Plaintiff's allegations, the Court will conduct its analysis on a legal claim-by-claim basis rather than refer to Plaintiff's allegations by Count.

In the subsequent case of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim. First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review. Arner v. PGT Trucking, Inc., No. Civ.A.09-0565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-0626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Fed. R. Civ. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

### A. Section 1983

Plaintiff seeks relief pursuant to 42 U.S.C.A. § 1983, alleging that SEPTA and its agents, employees, officials, and policymakers were acting under color of law and pursuant to the authority granted to them by the Commonwealth of Pennsylvania ("the Commonwealth" or "Pennsylvania"). Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C.A. § 1983. The statute itself does not independently create substantive rights, but rather merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775–76 (3d Cir. 2004) (internal citation omitted); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002); Bush v. Lancaster City Bureau of Police, No. Civ.A.07-3172, 2008 WL 3930290, at *3 (E.D. Pa. Aug. 26, 2008). Federal law requires a plaintiff to satisfy two steps in order to properly establish a § 1983 claim: (1) the deprivation of a constitutional right or other federal law, and (2) that a "person acting under the color of state law" is responsible for the alleged deprivation. Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).

In the seminal case of Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme Court held that § 1983 applies to municipalities and other local government units. Id. at 690. To establish § 1983 liability on such a governing body, the plaintiff must identify either a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that

body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the[ body's] official decision-making channels." Id. at 659. However, "it is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality." Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997). Rather, the plaintiff must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Id.; see also Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990) (plaintiff carries burden of demonstrating a "plausible nexus" or "affirmative link" between the municipality's custom or policy and the constitutional deprivation challenged) (internal citation and quotations omitted).

In the instant case, Plaintiff claims that SEPTA "maintained and/or acquiesced to a policy or custom of failing and/or declining to provide appropriate and necessary care to its passengers[.]" (Compl. ¶ 68.) Thus, Plaintiff has sufficiently plead the first prong of Monell. Where Plaintiff's claim fails, however, is under the second requirement of Monell—a direct causal link between the municipality's maintenance of the policy and the deprivation of a constitutional or federal right. Plaintiff asserts a Fourteenth Amendment due process violation because SEPTA, as an agency of the Commonwealth,[2] deprived the Decedent of his constitutional rights to life, liberty, privacy, bodily integrity, and freedom from pain. (Compl. ¶ 65.) Plaintiff puts forth two potential theories upon which a constitutional violation could be premised: (1) SEPTA's alleged duty to render emergency medical services to the Decedent, and (2) that SEPTA's actions under these circumstances established a state-created danger. Defendant moves to dismiss both these claims on the grounds that they do not rise to the level of a constitutional violation for § 1983 purposes.

---

[2] It is well established that SEPTA is treated as a municipality for § 1983 purposes. See Pokalsky v. Se. Pa. Transp. Auth., No. Civ.A.02-323, 2002 WL 1998175, at *2 n.2 (E.D. Pa. Aug. 28, 2002) (citing Bolden v. Se. Pa. Transp. Auth., 953 F.2d 807, 817 (3d Cir. 1991)).

### 1.     Duty to Render Emergency Services Theory

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1. "Individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (internal citation omitted). However, in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), the Supreme Court of the United States expressly held that the Due Process Clause does not impose an affirmative obligation on a state to protect its citizens, even when such aid may be necessary to secure life, liberty, or property interests. Id. at 196 (internal citations omitted). The Court reasoned that the Due Process Clause does not "guarantee [ ] certain minimal levels of safety and security," but rather serves as a limitation upon the states so as to prevent an abuse of power. Id. at 195–96. Moreover, in the context of a state's duty to render competent emergency services to its citizens, the rule of the Third Circuit is clear that the Due Process Clause does not provide a "federal constitutional right to rescue services, competent or otherwise." Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 478 (3d Cir. 2003); see also Badway v. City of Phila., 415 Fed. App'x 420, 421–22 (3d Cir. 2011).

Here, Plaintiff asserts that SEPTA's failure to render competent emergency medical care to the Decedent constituted a deprivation of his Fourteenth Amendment rights. While the Court sympathizes with Plaintiff's untimely loss of his son, the law is clear that such actions do not rise to the level of a constitutional violation. Rather, for the same reasons expressed by the Third Circuit in Brown and Badway, SEPTA "was under no constitutional obligation to provide competent rescue services" to the Decedent. Brown, 318 F.3d at 481. Consequently, the Court finds that Defendant

did not deprive the Decedent of a constitutional right for § 1983 purposes under these circumstances.

### 2. The State-Created Danger Theory

Plaintiff's second attempt to establish a constitutional violation is based on the "state-created danger" theory. The state-created danger theory operates as an exception to the general rule that the Due Process Clause does not require states to render governmental aid to their citizens. Under the theory, plaintiffs must satisfy a four-part test in order to impose liability on the state actors:

> (1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct;
> (2) the state actor acted with a degree of culpability that shocks the conscience;
> (3) there was some relationship between the state and the plaintiff such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions"; and (4) the state actor used his authority to create an opportunity for danger that otherwise would not have existed.

Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006) (internal citations omitted). To prevail on such a claim, a plaintiff must establish all four of the foregoing essential elements. Magwood v. French, 478 F. Supp. 2d 821, 828 (W.D. Pa. 2007) (internal citation omitted). The failure to satisfy any one of the four elements "obviates the need to analyze the other three elements" and defeats the state-created danger claim overall. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 235; Sanford v. Stiles, 456 F.3d 298, 311 (3d Cir. 2006) (providing that because plaintiff failed to satisfy one element of state-created danger theory, the remaining claims could not proceed); see also Smith v. Sch. Dist. of Phila., No. Civ.A.07-2080, 2009 WL 667455, at *3 (E.D. Pa. Mar.10, 2009) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 914 (3d Cir. 1997)). The Court focuses its analysis on the fourth element.

According to the state-created danger theory, a person acting under color of state law must affirmatively use his authority to create an opportunity for harm that otherwise would not have existed. Bright, 442 F.3d at 281; Ortiz ex. rel. Smith v. N.J. Div. of Youth & Family Servs., No.

Civ.A.07-4162, 2008 WL 1767019, at *5 (D.N.J. Apr. 15, 2008) (internal citations and quotations omitted). The theory is "predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger. . . . It is the misuse of state authority, rather than a failure to use it that can violate the due process clause."[3] Bright, 443 F.3d at 282 (quoting D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1374 (3d Cir. 1992)) (emphasis in original). The three necessary conditions to satisfy this fourth element are that (1) the state actor exercised his authority, (2) the state actor undertook an affirmative action, and (3) this action created a danger to the citizen or rendered the citizen more vulnerable to danger than had the state not acted at all. Ye v. United States, 484 F.3d 634, 639 (3d Cir. 2007) (citing Bright, 443 F.3d at 281–82).

The first condition requires the Court to consider whether the state actor exercised his authority. The Third Circuit has expressly stated that "[t]he 'authority' language is simply a reflection of the 'state actor' requirement[.]" Ye, 484 F.3d at 640. As previously stated, SEPTA is considered a state entity for § 1983 purposes. See Pokalsky, 2002 WL 1998175, at *2 n.2; Bolden, 953 F.2d at 817. Thus, the first condition of the fourth element of the state-created danger theory is met under these circumstances.

The next two conditions require a more intensive analysis. The second condition—that the state actor undertook an affirmative action—has generated significant discussion within this jurisdiction. "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the

---

[3] As noted by the district court in Ortiz, the failure to act only constitutes an affirmative act when there is a duty to act. Id. at *5 n.2. It has already been established above that, in the context of substantive due process, states have no constitutional duty to render competent rescue services to citizens.

protections of the Due Process Clause[.]" DeShaney, 489 U.S. at 200. The Third Circuit directly addressed this element of the state-created danger theory in Ye. In that case, a medical doctor who worked for the Commonwealth failed to recognize a patient's severe heart condition, and instead assured him that he would be fine, discharged him with a cough medicine prescription, and told him to return in three months. Ye, 484 F.3d at 635. Later that same day, the patient's son found him unconscious and rushed him to the emergency room, where the patient's severe cardiac condition was discovered. Id. The plaintiff asserted that the physician's assurances to the patient constituted an "affirmative act" under the state-created danger theory. Id. at 640. The Third Circuit rejected this contention, finding that the doctor's assurances did not fit within the parameters of a "deprivation of liberty" as defined by the Supreme Court in DeShaney. Id. at 642.

The Court finds Ye particularly instructive here. Defendant's actions in the instant case did not constitute a deprivation of liberty within the meaning of Ye or DeShaney. SEPTA did not, either by physical or verbal act, in any way "restrain" the Decedent in violation of his due process rights. The Decedent voluntarily boarded the train. When the train operator noticed that the Decedent was unresponsive, he immediately radioed the dispatcher for further assistance, and was instructed to return to the Terminal upon completion of the route where further assistance would be provided. Decedent was therefore in no way restrained by SEPTA's actions here. Finally, Plaintiff's allegation that SEPTA failed to stop the train and immediately render emergency medical services cannot constitute an affirmative act on Defendant's behalf because it is well established law that state actors "cannot use their authority to create [ ] an opportunity for danger . . . by failing to act." Peet v. Beard, No. Civ.A. 3:10-482, 2011 WL 718723, at *9 (M.D. Pa. Jan. 25, 2011) (internal citations and quotations omitted); Bennett ex. rel Irvine v. City of Phila., 499 F.3d 281, 288 (3d Cir. 2007).

The third and final condition to the fourth element of the state-created danger theory provides

that the state actor's affirmative act created a danger to the citizen or rendered the citizen more vulnerable to danger than had the state not acted at all. The Third Circuit has instructed courts considering this condition to adopt the language of "but for" causation. Ye, 484 F.3d at 642. In doing so, the proper inquiry is whether the harm in question would have occurred were it not for the state's actions. Id.; see also Rivas v. City of Passaic, 365 F.3d 181, 197 (3d Cir. 2004). Additionally, there must be a "direct causal relationship" between the affirmative act of the state and a foreseeable harm suffered. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 432 (3d Cir. 2006) (internal citations omitted); Peet, 2011 WL 718723, at *9. Finally, the state actor's affirmative acts themselves must have created the danger, and cannot be based upon a danger that already existed independent of the state's actions. See DeShaney, 489 U.S. at 190 (finding that while state social workers may have been aware of the dangers posed by a child's abusive father, their failure to remove the child from the father's custody "played no part" in the creation of a danger or in any way made the child more vulnerable to such a danger); Bennett, 499 F.3d at 289 (finding that Department of Human Services' failure to investigate a child's abuse did not constitute an affirmative act because the danger already existed prior to this point and the social worker's actions did not create any danger by the state); but see Rivas, 365 F.3d at 197 (finding that emergency medical technicians' failure to inform police that victim was epileptic and that placing him in restraints could be fatal created an opportunity for harm that otherwise would not have existed).

    The allegations of the Complaint and the reasonable inferences therefrom do not suggest that SEPTA created a danger to the decedent or that it rendered him more vulnerable to any danger than had it not acted at all. First, the facts indicate that the Decedent was staggering and appeared intoxicated prior to boarding the train. Nothing occurred on the train to cause or exacerbate this already in-progress condition. Thus, while SEPTA may have been alerted of a potential danger when

the Decedent did not respond to the employee's attempts to arouse him, these actions did not *create* a danger because the danger already existed prior to this point. Moreover, SEPTA's actions did not render the Decedent more vulnerable to any danger than had it not acted at all. The same unfortunate result would still likely have occurred here even if the train operator had not radioed to the Terminal and continued to operate the train. This is because it cannot affirmatively be stated that the Decedent would have lived under these circumstances *but for* SEPTA's failure to immediately stop the train and render medical assistance. Finally, there is no "direct causal relationship" between a foreseeable harm and SEPTA's actions here. As an initial matter, merely because the Decedent appeared unresponsive does not indicate that the employee could reasonably foresee his death. Even with this fact aside, however, no clear line of correlation is evident indicating that SEPTA's failure to stop the train and immediately render aid caused the Decedent's death. Any number of factors independent of SEPTA's actions here—*i.e.*, a pre-existing medical condition, alcohol or drugs consumed by the Decedent, a prior injury, etc.—could have been the direct cause of death. Therefore, the Court finds that SEPTA's actions under these circumstances did not endanger the Decedent or render him more vulnerable to any danger than had it not acted at all.

Based on all the above, the Court finds that the fourth element of the state-created danger theory is not satisfied because Defendant did not affirmatively use its authority to create an opportunity for harm that otherwise would not have existed. Given that Plaintiff has failed to establish one of the four elements of the state-created danger theory, the Court need not engage in an analysis of the other three elements, and Plaintiff's claims on this theory can go no further.[4] See

---

[4] Despite the fact that the Court need not consider the other three elements of the state-created danger theory in detail, it notes that Plaintiff would also be unlikely to satisfy both the first and second elements of the theory.

The first element is that the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 908 (3d Cir.

Phillips v. Cnty. of Allegheny, 515 F.3d 224, 235; Sanford, 456 F.3d at 311.

In sum, given the allegations of the Complaint, together with their reasonable inferences, the Court finds that there is no constitutional violation upon which Plaintiff's § 1983 claim can be established. Given that there has been no underlying constitutional violation in this case, Plaintiff's claim against SEPTA based upon an unconstitutional policy or custom also fails as a matter of law. See Monell, 436 U.S. at 691–92; Malar v. Delaware Cnty., No. Civ.A.08-960, 2009 WL 3493775,

---

1997). "To adequately plead foreseeability, a plaintiff must allege an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." Ortiz, 2008 WL 1767019, at *4 (internal citations and quotations omitted). In this case, the harm ultimately caused—the Decedent's death—was not sufficiently foreseeable. The Decedent boarded the train without any assistance. The Complaint does not allege that he was suffering from a severe or life-threatening medical condition when the train operator attempted to arouse him from his unresponsive state. Thus, it was not necessarily foreseeable that the Decedent would die under these circumstances. Moreover, the ultimate harm cannot be said to be a fairly direct result of the state's actions. As noted above, any number of factors independent of SEPTA's actions could have been the ultimate cause of death.

   The second element is that the state's actions "must be so ill-conceived or malicious that [they] shock the conscience." Schieber v. City of Phila., 320 F.3d 409, 417 (3d Cir. 2003) (internal citations and quotations omitted). While the Third Circuit has indicated that there is no "calibrated yardstick" upon which behavior can be measured and that the degree of wrongfulness depends upon the particular facts of each case, Kaucher, 455 F.3d at 425 (internal citation omitted); Nicini v. Morra, 212 F.3d 798, 810 (3d Cir. 2000) (internal citation omitted); the Supreme Court has stated that only when the state actor's behavior is "*so egregious*, *so outrageous*, [then] it may fairly be said to shock the contemporary conscience." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998) (emphasis in original). Thus, a plaintiff must establish that a defendant's actions "consciously disregarded, not just a substantial risk, but a great risk that serious harm would result[.]" Ziccardi v. City of Phila., 288 F.3d 57, 66 (3d Cir. 2002). In the instant case, Defendant's actions did not rise to such a high level of culpability. The facts pled in the Complaint do not indicate that the train operator was aware of a serious medical condition that required immediate assistance when he attempted to arouse the Decedent. Thus, there was no "great risk that serious harm would result" by leaving the Decedent on the train until it returned to the terminal where further assistance would be provided. Moreover, the SEPTA operator did not "consciously disregard" the Decedent. Rather, he radioed for assistance when the Decedent did not respond. Such conduct is not "egregious" or "outrageous" under the circumstances.

at * 12 (E.D. Pa. Oct. 23, 2009) ("Because I have concluded that there was no constitutional violation in this case, [Plaintiff's] Monell claim against the governmental agency also fails[.]") (internal citation omitted).  Therefore, Defendant's Motion on these grounds will be granted.

  **B.** **State Law Claims**

  In conjunction with his federal law claims, Plaintiff also brings state law claims against Defendant based on the Pennsylvania Constitution and various state tort actions.  District courts have limited discretion to decide whether or not certain claims arising under supplemental jurisdiction should remain in federal court.  See Ohad Assoc. v. Twp. of Marlboro, No. Civ. A.10-2183, 2010 WL 3326674, at *5 (D.N.J. Aug. 23, 2010).  Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction[.]"  Id.  As a general rule, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  Ashton v. City of Uniontown, No. Civ.A.11–1937, 2012 WL 208055, at *5 (3d Cir. Jan. 25, 2012) (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)); Mazurkiewicz v. Doylestown Hosp., 223 F. Supp. 2d 661, 667 (E.D. Pa. 2002); Miletta v. United States, No. Civ.A. 02-1349, 2005 WL 1318867, at *14–15 (D.N.J. May 27, 2005).  In such a situation, the district court may remand to the state court "only those individual claims that arise under its supplemental jurisdiction; the court may not remand any federal law claims, even if those claims appear to be mere appendages to what is essentially a state law action."  Ohad, WL 3326674, at *6 (internal citation omitted).

  In this case, original jurisdiction is based upon Plaintiff's federal law claims pursuant to §

13

1983. As determined above, these claims do not survive a motion to dismiss. Therefore, no viable federal cause of action remains against SEPTA. Moreover, Plaintiff has not alleged any specific facts indicating that judicial economy, convenience, and fairness to the parties warrants the state law claims to remain in federal court. Ashton, 2012 WL 208055, at *5; Miletta, 2005 WL 1318867, at *15. Finally, given that this is "such an early time in the litigation, prior to any discovery or other pretrial practice, there is no justification for retaining jurisdiction sufficient to overcome the presumption that this Court must decline to decide the pendent state claims." J.H. ex rel. J.H. v. Egg Harbor Twp. Bd. of Educ., No. Civ.A.08-488, 2009 WL 1322514, at *7 (D.N.J. May 11, 2009) (internal citations and quotations omitted). As such, pursuant to § 1367(c), the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.[5]

## IV. CONCLUSION

For the reasons set forth above, the Court finds that the Complaint in the case at bar fails to adequately state a claim upon which relief can be granted under 42 U.S.C. § 1983. Accordingly, Defendant's Motion to Dismiss is granted in regards to Plaintiff's federal law claims. As to Plaintiff's state law claims, the Court declines to exercise supplemental jurisdiction.

An appropriate order follows.

---

[5] Upon dismissal, nothing in this Memorandum and accompanying Order shall preclude Plaintiff from asserting his state law claims in state court. According to 28 U.S.C. § 1367(d), when a court declines to exercise supplemental jurisdiction, the plaintiff has at least thirty days after dismissal to re-file its state law claims in state court. See 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed[.]"); see also Hedges v. Musco, 204 F.3d 109, 123–24 (3d Cir. 2000) (citing Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998)).